L. Eric Dowell, SBN 011458
Leah S. Freed, SBN 021332
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 778-3700
Fax: (602) 778-3750
Email: Eric.Dowell@ogletreedeakins.com
Email: Leah.Freed@ogletreedeakins.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Denise Menchaca,<br><br>           Plaintiff,<br><br>vs.<br><br>Maricopa Community College District,<br><br>           Defendant. | No. CV07-01970 PHX-GMS<br><br>**DEFENDANT MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Plaintiff's Response to MCCCD's Motion for Summary Judgment fails to raise a single triable issue of fact precluding summary judgment on her Americans with Disabilities Act ("ADA") claims. Plaintiff asserts that she is disabled as a result of a 1991 traumatic brain injury ("TBI") which allegedly impairs her ability to "interact with life." Yet, no court has ever recognized that "interacting with life" is a major life activity under the ADA. Moreover, neither Plaintiff nor her psychologist shed any rational light on what "interacting with life" actually means. Accordingly, there is no plausible basis for this Court to adopt such a novel and vaguely defined disability.

Plaintiff also fails to establish that she is substantially limited in her "interaction with life." While Plaintiff contends she is impaired 100% of the time in her ability to interact with life, the undisputed evidence demonstrates otherwise. Since her 1991 accident, Plaintiff has obtained her doctorate at Harvard and maintained near full-time

employment for over ten years. Indeed, as Plaintiff admits, "she is not completely disabled or in a permanent state of agitation;" rather, she has episodic losses of emotional control.

Notwithstanding the fact that Plaintiff does not have a protected disability, MCCCD provided Plaintiff with reasonable accommodations. When Plaintiff asked for accommodations beginning in the fall of 2004, MCCCD accepted Plaintiff's representation that she was disabled and provided Plaintiff with leave time, mentoring, modified schedules and reduced teaching and counseling responsibilities. Despite these accommodations, in January 2006, Plaintiff claims that her TBI suddenly and inexplicably caused her to blow up at her new supervisor and threaten to "kick [her] ass." While Plaintiff again wanted MCCCD to take her word that her TBI was the cause of her behavior and to accommodate her, Plaintiff's requested "accommodation" essentially was that MCCCD "tolerate" her threatening conduct after the fact. The ADA does not, however, require employers to tolerate threats of physical violence under the guise of an "accommodation."

Based upon Plaintiff's threat of violence, and her claim that her TBI was to blame, MCCCD sought to determine whether Plaintiff was fit to do her job as a counselor by sending her to two independent medical examinations. Two independent psychologists opined that Plaintiff was not disabled and not fit for duty. As such, MCCCD terminated Plaintiff's employment.

For the reasons set in MCCCD's Motion and herein, summary judgment should be granted for MCCCD.

## I. LEGAL ANALYSIS

### A. Plaintiff Cannot State A Prima Facie Case Under The ADA.

Plaintiff's ADA claim fails because she cannot establish any of the *prima facie* elements of her ADA claim. First, Plaintiff cannot demonstrate that her ability to "interact[] with life" is a major life activity under the ADA. Second, Plaintiff's TBI is not a substantially limiting impairment because it is episodic and limited in its severity.

Third, while MCCCD accepted Plaintiff's representations that her TBI affected her behavior, it did not regard Plaintiff as "disabled" within the meaning of the ADA. Finally, Plaintiff is not a qualified individual under the ADA because no reasonable accommodations would prevent her unpredictable episodes of "loss of emotional control." Accordingly, Plaintiff's ADA claim should be dismissed.

      1.      "Interaction with Life" Is Not A Major Life Activity And Plaintiff's Alleged Impairment Is Not Substantially Limiting.

"Interaction with life" is not a major life activity. Indeed, Plaintiff cannot cite a single case holding that "interaction with life" qualifies as a major life activity under the ADA. Instead, Plaintiff and her psychologist proffer what only can be described as psychobabble concerning her alleged impairment. For example, Plaintiff asserts that "while most people in common stressful situations have the capacity to either work through or overwhelm their emotions, to capture them, to repress them, to manage them so that they can engage effectively in an activity, Plaintiff is impaired in her ability to manage or work through her emotions." Resp. at p. 12. Plaintiff's treating psychologist, Dr. Wilson, attempts to explain further: "[as] she begins to experience feelings in response to a situation, [she] becomes engaged in the feelings and not to the task." *Id.* Reduced to its essence, Plaintiff's claim is that she is impaired in her ability to respond to undefined stressful "situations" because she experiences unidentified "feelings" and may not "engage effectively" in indescript "tasks." Plaintiff's vague explanation of her condition fails to identify any real "activity," much less a "basic activity," that the average person can perform with little difficulty. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S. Ct. 681 (2002)*; see McAlindin v. County of San Diego*, 192 F.3d 1226, 1233 (9th Cir. 1999). Because Plaintiff cannot establish that the nebulous activity she characterizes as "interaction with life" is a major life activity for purposes of the ADA, her claim fails as a matter of law.

Even assuming Plaintiff could establish that "interaction with life" is a major life activity, which she cannot, her claim fails because she cannot show that her alleged

3

impairment is substantially limiting. Plaintiff again relies on vague statements about her condition to attempt to meet her burden of proof. Plaintiff asserts that her TBI "significantly interferes with her work and personal life one hundred percent of the time" because she does not have the same insight into her own behavior or self-monitoring capabilities as "healthy, high functioning individuals."[1] Resp. at pp. 12-13. Yet, Plaintiff does not offer any evidence, other than her own self-serving assertion, establishing that her condition is substantially limiting. Indeed, the undisputed admissions of Plaintiff and Dr. Wilson demonstrate that her purported disability is unpredictable, episodic and limited in its severity. Plaintiff concedes that "she is not completely disabled or in a permanent state of agitation," and her condition can be mitigated by certain unidentified accommodations, supportive treatment and medication.[2] [SOF ¶ 71.] Dr. Wilson testified that Plaintiff's TBI only "*episodically*" impairs her emotional control in various degrees. [SOF ¶ 68.] Dr. Wilson further testified that the symptoms of Plaintiff's TBI and PTSD went into "remission" in 1996, and he did not treat Plaintiff again until 2004. [Defendant's Supplement Statement of Facts "SSOF" ¶ 1.] Plaintiff herself admits that during most of the period 1996 to January 2006, she responded well to treatment. [Plaintiff's Objection to SOF 75; Plaintiff's Controverting Statement of Facts ("PCSOF") ¶ 70.] Based on its episodic nature and limited severity, Plaintiff's TBI fails to rise to the level of a substantially limiting impairment. *See McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999) (to establish substantial limitation in ability to interact with others, plaintiff must demonstrate that his "relations with others were *characterized on a regular basis by severe problems*, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary.") (emphasis added). Because Plaintiff

---

[1] While Plaintiff compares herself to "healthy, high-functioning individuals," the appropriate comparison under the ADA is to "the average person in the general population." 29 C.F.R. § 1630.2(j)(1)(i).

[2] As set forth in sections I(A)(3) and I(B), Plaintiff fails to describe what accommodations or treatment mitigate the alleged "behavioral effects" of her TBI.

4

cannot establish that she has an impairment that substantially limits her in a major life activity, she cannot establish she is "disabled" under the ADA.

### 2. MCCCD Did Not Regard Plaintiff As Disabled.

Plaintiff's alternative argument that she was "regarded as" disabled similarly fails to survive summary judgment because there is no evidence that Defendants perceived Plaintiff as having a substantially limiting impairment. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S. Ct. 2139 (1999) (plaintiff must show employer "mistakenly believe[d] that an actual, non-limiting impairment substantially limit[ed]" plaintiff's ability to perform a major life activity). In support of her claim, Plaintiff proffers several alleged statements purporting to attribute Plaintiff's conduct to her TBI or referring to her "disability." Resp. at p. 14. Yet, none of these alleged statements show that MCCCD perceived Plaintiff as having a "disability" for purposes of the ADA. *See Tockes v. Air-Land Transport Services, Inc.*, 343 F.3d 895, 896 (7th Cir. 2003) (employer's reference to employee as "disabled" is insufficient to establish that employer regarded employee as disabled. It is ironic that Plaintiff would claim she was erroneously "regarded as" disabled when she herself attributed her performance deficiencies and behavioral problems to her TBI. [SOF ¶¶ 24-26.] Moreover, in addition to the lack of evidence demonstrating that Drs. Manlove, Giovannini, Healy and O'Connor believed Plaintiff had a substantially limiting impairment, their statements do not establish that MCCCD regarded Plaintiff as disabled because they did not make the ultimate decision to terminate Plaintiff's employment. [SOF ¶ 65.]

Plaintiff also mistakenly asserts that MCCCD's reliance on the IMEs that Plaintiff did not have a covered disability is irrelevant to the issue of whether MCCCD regarded Plaintiff as disabled. On the contrary, an employer's reasonable reliance on a medical opinion may demonstrate that an employer did not act on the myths, fears, and stereotypes associated with a disability that the "regarded as" definition of disability was designed to redress. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1190 (10th Cir. 2007). Plaintiff's argument does not undermine the undisputed fact that MCCCD reasonably

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016

relied on the conclusions of the independent physicians who conducted these IMEs of Plaintiff. Moreover, even if Dr. Ford rendered an inappropriate legal opinion, as Plaintiff contends, that does not mean MCCCD had no basis to reasonably rely on his opinion that Plaintiff was not disabled for purposes of the ADA.

For the foregoing reasons, there is no triable issue of fact as to whether Plaintiff was "disabled" under the ADA.

### 3. Plaintiff Is Not A "Qualified Individual."

Plaintiff also fails to demonstrate she is a "qualified individual" because there is no evidence that any reasonable accommodation would prevent her unpredictable emotional outbursts. Plaintiff submits that her ability to perform her job prior to her threat to Ms. Bowman is evidence that she is qualified. Yet, Plaintiff wholly ignores the undisputed evidence that her threat occurred despite MCCCD's good faith efforts to accommodate her and her own admission that she was doing "fine" and did not need additional accommodations at the time of her threat. Moreover, Plaintiff fails to address the undisputed evidence that neither she nor anyone else can predict and/or prevent her episodic loss "emotional control." Resp. at p. 11.

Plaintiff describes her "disability" in the following terms: "[as] she begins to experience feelings in response to a situation, [Plaintiff] becomes engaged in the feelings and not to the task." Resp. at p. 12. Yet, neither Plaintiff nor Dr. Wilson can say what those "feelings" might be or what "situation" will cause Plaintiff to respond inappropriately or in a threatening manner. By Plaintiff's own account "many times, [she] will simply avoid a situation in order to quiet herself in relationship to the feelings, and so a task will go undone. *Id.* At other times, Plaintiff may respond in an angry or hostile manner, or in a manner that gives the impression she is upset." *Id.* Significantly, Plaintiff and Dr. Wilson concede there is no way to predict or prevent what "situations" will evoke an inappropriate, angry or hostile reaction by Plaintiff. [SOF ¶¶ 81, 82, 89, 90.] While Plaintiff's threat to Ms. Bowman may not give rise to an affirmative defense

that she poses a "direct threat," the fact that neither Plaintiff nor her physician predicted the threat, or can ensure that Plaintiff will not make similar threats in the future demonstrates that Plaintiff is not qualified for her position.

The only accommodation that all of the medical experts in this case agree would mitigate or eliminate Plaintiff's outbursts is to eliminate all of Plaintiff's interpersonal contact at work. Dr. Blackwood concluded, and Dr. Ford agreed, that if Plaintiff had a psychiatric impairment, the only apparent accommodation would be "eliminating all interpersonal contact for Dr. Menchaca at work." [SOF ¶¶ 57, 59.] Plaintiff's own physician, Dr. Wilson testified that he agreed with all of Dr. Blackwood's conclusions about Plaintiff's condition. [SOF ¶ 70.] Yet, eliminating all interpersonal contact is not a reasonable accommodation under the ADA. *See Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006).

Plaintiff alternatively contends that she is qualified because MCCCD could have reassigned her to another open position. Yet, Plaintiff fails to submit any evidence, other than her own opinion, that she was qualified for any open positions at MCCCD. Plaintiff attempts to establish her burden of proof by listing dozens of positions and asserting, without any evidence, that she is qualified for each of them. However, every one of the positions identified by Plaintiff require interpersonal contact with students, faculty and, in some cases, members of the public – a function Plaintiff has not and cannot establish she is qualified to perform. Several of the positions Plaintiff claims she was qualified for require "crisis counseling," a job function Dr. Wilson testified she should not perform. [SOF ¶ 91.] Another of the positions Plaintiff asserts she is qualified for is a counselor at Lewis Prison facility, where she would have "daily contact with minimum, medium and maximum security male inmates." Plaintiff's lack of qualification for this position is evidenced by Dr. Wilson's testimony that Plaintiff should not be exposed to situations involving "confrontational" students. [SOF ¶ 92.] The Lewis Prison is not a setting without "confrontational" individuals. Based upon the undisputed facts, Plaintiff cannot meet her burden to establish that she was qualified for

any of the open positions at the time of her termination. *See Fredenburg v. Contra Costa County Dep't. of Health Services*, 172 F.3d 1176, 1180 (9th Cir. 1999) (plaintiff needs to identify a vacant position or indicate how transfer would enable her to perform the essential functions of her job). Because Plaintiff cannot demonstrate that she is a qualified individual, her ADA claim fails as a matter of law.

### B. MCCCD Engaged In The Interactive Process And Attempted To Accommodate Plaintiff's Alleged Disability.

Plaintiff cannot meet her burden to show to show that a reasonable accommodation would have enable her to perform the essential functions of her job because it is undisputed that there is no way to prevent or predict her episodic lack of emotional control, in particular her angry and violent outbursts.[3] *See Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997); *Buckingham v. U.S.*, 998 F.2d 735, 740 (9th Cir. 1993). It also is undisputed that MCCCD attempted to accommodate Plaintiff's purported disability. At various periods during Plaintiff's employment, MCCCD provided Plaintiff with leave time, a part-time schedule, a job coach and reduced teaching and counseling responsibilities. [SOF ¶¶ 23, 24-25, 26, 28, 31.] During a meeting in January 2005 to discuss possible accommodations for Plaintiff to return to work, Plaintiff informed MCCCD that she intended to return to work on a full time basis. While she requested a job coach as one of several accommodations, Plaintiff specifically agreed that she was able to perform all of her job duties without an outside job coach. [SOF ¶ 32.] Plaintiff's supervisor, Dr. Healy, agreed to serve as her job coach by providing Plaintiff with weekly feedback on her performance for a period of time. [SOF ¶ 33.] Even after her coaching sessions with Dr. Healy purportedly ended after six to eight weeks, Plaintiff felt that she was performing her job well and did not request any other accommodations. [SOF ¶ 35; Plaintiff's Response to SOF ¶ 75.]

---

[3] While Plaintiff purports to allege a separate claim for relief based on MCCCD's alleged failure to engage in the interactive process, the failure to engage in the interactive process is not an independent basis for relief. S*ee, e.g., Hohider v. United Parcel Service, Inc.*, 243 F.R.D. 147, 190-91 (W.D. Pa. 2007).

Despite these accommodations, Plaintiff was unable to predict or prevent her threat to Ms. Bowman. [SOF ¶ 84.]

Plaintiff's failure to accommodate claim apparently is based on MCCCD's failure to accommodate her threat to Ms. Bowman after-the-fact. While Plaintiff makes much ado of the fact that MCCCD did not provide her with a formal job coach, she admits that she cannot show that a job coach would have prevented her threat. Indeed, Plaintiff has failed to proffer any evidence to demonstrate that any reasonable accommodation would have prevented Plaintiff's threat to Ms. Bowman, or that any accommodation would prevent future threats of violence. Plaintiff's position would place MCCCD in an untenable position. Plaintiff asks the District to put her back into a position in contact with vulnerable students with no guarantees that she will not again engage in threats of violence. Yet, the District owes a duty of care to students and faculty alike. Similarly, as discussed in Section II.A.3 herein, there is no record evidence that reassignment would have been a reasonable accommodation.

Finally, if Plaintiff's claim proceeds solely on the theory that she was "regarded as" disabled, MCCCD did not have a duty to accommodate a perceived, but non-existent disability. *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003).

**C. MCCCD Had A Legitimate, Non-Discriminatory Reason For Discharging Plaintiff.**

Plaintiff's threat to Ms. Bowman, even if caused by her TBI, constituted a legitimate, non-discriminatory reason for her discharge. Plaintiff contends that her threat was neither egregious nor criminal because she did not truly intend to assault Ms. Bowman, and thus her conduct does not fall within the exception set forth in *Newland v. Dalton*. 81 F.3d 904, 906 (9th Cir. 1996) (indicating that employee could be terminated for "egregious and criminal" conduct even if such conduct is the result of covered disability). Whether Plaintiff actually intended to physically assault Ms. Bowman is, however, irrelevant because Arizona law looks to the objective conduct of a person, rather than their intent, in determining whether that person has made an unlawful threat.

*In re Ryan*, 202 Ariz. 19, 22, 39 P.3d 543, 546 (App. 2002) (test for determining whether conduct or statement at issue in prosecution for threatening or intimidating constitutes a "true threat," *i.e.*, whether a reasonable person would foresee that the statement would be interpreted by those to whom defendant communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of a person, is an objective one). It is undisputed that Plaintiff's threat to Ms. Bowman was so loud that she could be heard more than 50 feet away. [SOF ¶ 50.] In Plaintiff's own words, she was "obsessing" and "went off" on Ms. Bowman. [SOF ¶¶ 47, 48, 52.] Given these circumstances, a reasonable person would clearly foresee Plaintiff's threat to Ms. Bowman's as a true threat of harm. Accordingly, Plaintiff's "egregious and criminal" conduct constitutes a legitimate, non-discriminatory reason for her discharge.

Plaintiff further contends that even if the Court finds her threatening conduct was not protected, the other reasons stated in the Chancellor's recommendation for termination demonstrate that Plaintiff's discharge was based on her disability. Plaintiff fails to proffer, however, any evidence to demonstrate that MCCCD believed Plaintiff's conduct or other performance issues were caused by her alleged disability. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (quoting Fed. R. Civ. P. 56(e)) (party opposing summary judgment must come forward with specific facts demonstrating genuine issue for trial). Indeed, Plaintiff concedes that at least one of the incidents (her failure to acknowledge the members of GWCC administration in the hallway) was not at all related to her alleged disability. [SOF ¶¶ 42-43.] With respect to the remaining incidents, MCCCD has proffered undisputed testimony that it relied on the IMEs in concluding that Plaintiff did not have a covered disability. Plaintiff has no evidence that MCCCD's reliance was unreasonable or disingenuous. Accordingly, Plaintiff cannot show that the stated reasons for her termination were based on her alleged disability.

### D. MCCCD's IMEs Did Not Violate The ADA.

MCCCD was entitled to require Plaintiff to submit to an IME because Plaintiff herself attributed her threat to Ms. Bowman to her TBI. [SOF ¶¶ 49, 52.] Plaintiff contends that MCCCD's IMEs violated the ADA because Gateway's President, Dr. Giovannini, recommended Plaintiff's termination to MCCCD's Vice Chancellor of Human Resources, Al Crusoe, before the IMEs were conducted. Plaintiff's argument assumes that Mr. Giovannini's recommendation was tantamount to a final termination decision. It was not. On the contrary, Dr. Giovannini did not make the decision to terminate Plaintiff; he only *recommended* her termination. As part of the termination process, Dr. Giovannini had to obtain the approval of Mr. Crusoe before submitting his termination recommendation to the Chancellor. [SSOF ¶ 2; PCSOF ¶ 85.] Mr. Crusoe advised that Plaintiff submit to an IME. [SSOF ¶ 3.] After receiving the results of the IMEs, which indicated that Plaintiff did not have a covered disability, the Chancellor recommended Plaintiff's termination to the Governing Board. [SOF ¶ 64.]

Because Plaintiff attributed her threat of violence to her TBI, the IMEs clearly were job-related and consistent with business necessity. [SOF ¶¶ 49, 52]; *see, e.g., Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811-12 (6th Cir. 1999); *Mickens v. Polk County Sch. Bd.*, 430 F.Supp.2d 1265, 1289 (M.D. Fla. 2006). Accordingly, such examinations did not violate the ADA. 42 U.S.C. § 12112(d)(4)(A)(B); *Yin v. State of Cal.*, 95 F.3d 864, 868 (9th Cir. 1996) (holding that ADA permitted employer to require employee to undergo independent medical examination, even if goal was to determine if employee was individual with a disability or nature or severity of disability, where the proposed medical examination was job-related).

### E. Punitive Damages.

Plaintiff concedes that her claim for punitive damages is subject to dismissal. Accordingly, Plaintiff's claim should be dismissed.

## II. CONCLUSION

For the foregoing reasons, MCCCD respectfully request that the Court dismiss Plaintiff's claims.

DATED this 3rd day of October 2008.

                                                  Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

                                        By   s/L. Eric Dowell
                                              L. Eric Dowell
                                              Leah S. Freed
                                              2415 East Camelback Road, Suite 800
                                              Phoenix, Arizona 85016
                                              Attorneys for Defendant Maricopa Community College District

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October, 2008, I electronically transmitted the attached document to the Clerk's Office using the ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

Edmundo P. Robaina
ROBAINA & PALOMINO, P.C.
One E. Camelback Road, Suite 300
Phoenix, AZ 85012

Attorneys for Plaintiff


s/ Sophia E. Bertzikis

6703421.1 (OGLETREE)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016